OPINION OF THE COURT
William E. Garnett, J.
*530 When determining the registration level of a sex offender convicted of possessing a sexual performance by a child (Penal Law § 263.16) pursuant to the Sex Offender Registration Act (hereinafter SORA; Correction Law art 6-C), should the court consider the children depicted in a performance as “victims” in applying the risk factors established by the Board of Examiners of Sex Offenders?
On March 31, 2004, the defendant pleaded guilty to the class E felony of possessing a sexual performance by a child. (Penal Law § 263.16.) The defendant was promised a probation sentence with the specific condition that he register as a sex offender under the SORA.
On June 30, 2004, the original sentence date, the court, pursuant to Correction Law § 168-d (3), commenced a determination hearing to set the defendant’s registration level. The court employed the Risk Assessment Guidelines chart developed by the Board of Examiners of Sex Offenders in compliance with section 168-Z (5) of the Correction Law. The first section of the chart analyzes the “Current Offense(s).” Initially, the prosecution argued that points should be assessed against the defendant for the age of the children depicted in the performance, the number of victims as depicted in the performance and the relationship between the defendant and the children, i.e., a stranger. The assessment of these points would have raised the defendant’s registration level from one to two. The defense objected to any such imputation of risk factor points. The defense averred that these factors were only chargeable to a defendant who had had actual contact with the victim(s) and not a defendant who merely possessed or viewed a pornographic performance of a child as in this case. The prosecution contended that, despite the lack of actual contact between the defendant and the children, the children were still victims of the defendant’s acts as his possession of the performance materially aided the exploitation of the children depicted in the performance.
The court adjourned the sentence to give the prosecution additional time to obtain persuasive material to buttress its position. On the next date, the prosecutor reported that he had not found any statute, case law or legislative history to support the People’s contention. The prosecution withdrew its request to have “victim” points assessed against the defendant. The defendant was therefore determined to be a level one registrant.
Although the prosecution’s withdrawal of its request to assess these risk factor points rendered this issue moot, the court will *531 address the prosecution’s initial contention that the children depicted in the performance be denominated “victims” under the SORA as preserved under the exception to the mootness doctrine. This case meets the major criteria for the application of the exception. (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980]; People ex rel. Wagner v Infante, 167 AD2d 630, 631-632 [3d Dept 1990].) This issue will inevitably be confronted again in future SORA cases. Further, a resolution of this issue would provide clarification in the application of the risk assessment factors in SORA cases. Specifically, the novel argument made initially by the prosecutor will inevitably be made again as the SORA classifies other crimes in which the defendant may not have had direct contact with the “victim” as registrable offenses (e.g. Penal Law § 230.30 [2]; §§ 230.32, 263.10, 263.11, 263.15; Le Drugstore Etats Unis v New York State Bd. of Pharm., 33 NY2d 298, 300 [1973]). Moreover, an issue should not be mooted if the question or issue presented is one of importance and interest. (Matter of Jones v Berman, 37 NY2d 42, 57 [1975].) The interpretation of the SORA is still in its infancy and case law regarding this statute is relatively scant. Thus, the resolution of this issue fits within the exception to the mootness doctrine. The SORA became effective on January 21, 1996. The initial statute defined “sex offense” to include, among others, any violation of “article 263 of the penal law.” (Correction Law former § 168-a [2], as added by L 1995, ch 192, § 2.) Possessing a sexual performance by a child did not become a crime until November 1, 1996, almost 11 months after the effective date of the SORA. (Penal Law § 263.16.) In 1999, the SORA definition of “sex offense” was technically amended by striking out the number “263” and substituting the words “two hundred sixty-three.” (Correction Law § 168-a [2], as amended by L 1999, ch 453, § 1.) Thus, on its effective date, the crime of possessing a sexual performance by a child also, by definition, became a “sex offense” subject to the requirements of the SORA. However, despite the enactment of this new crime, the SORA was not amended to indicate whether the child or children depicted in a sexual performance should be characterized as a victim(s) of the “sex offense.”
The SORA is barren of any explicit guidance on the issue of whether a child depicted in a sexual performance is a “victim” under the statute. The statute does not explicitly define “victim” and the “[Legislative purpose or findings” do not provide any clarity on this issue. (L 1995, ch 192, § 1.) The *532 legislative intent on this issue is ambiguous as the law merely enjoins the Board of Examiners of Sex Offenders to “develop guidelines and procedures to assess the risk of a repeat offense by such sex offender.” (Correction Law § 168-Z [5].) This subdivision further mandates that the Board include as factors whether the sex offense was committed against a child, the relationship between the offender and the victim and a review of any victim impact statement. (Correction Law § 168-Z [5] [a] [iv]; [b] [i]; [i].) Implicit in a consideration of whether the victim was a child, what the relationship between the offender and the child-victim was and any statements given by the child-victim is that the offender and the victim had intimate, albeit illicit, contact.
The Board of Examiners of Sex Offenders has promulgated the Risk Assessment Guidelines chart in implementing its statutory mandate. The factors listed under the rubric of “Current Offense(s)” are similarly unclear as to their application to this crime. By the Guidelines, a court in a SORA case is required to consider the use of violence, actual contact with the victim and the mental and physical condition of the victim. These factors appear to require actual physical contact between the offender thus obviating their applicability to this crime. On the other hand, the factors including the number of victim(s), the continuing course of sexual misconduct and the age, if ascertainable, of the victim(s) could arguably be applied to the crime of possessing a sexual performance by a child. Yet, these factors, viewed as a whole and given a commonsense reading, preponderate in favor of the conclusion that the Board did not contemplate that these factors would be applied in a risk level determination for this crime. Moreover, the SORA Risk Assessment Guidelines and Commentary, published by the Board of Examiners in November 1997, makes no reference to the applicability of the Guidelines to this crime. Significantly, the Commentary on the risk factor of the victim’s age noted: “[s]uch offenders [i.e., those who target children] pose a heightened risk to public safety since young children lack the physical strength to resist and can be more easily lured into dangerous situations than adults.” (Id. at 11 [“Factor 5: Age of Victim”].) Again, this language manifests an intent that this factor should be applied only where there is actual contact between the offender and the victim.
Thus, a fair reading of the statute, the Guidelines created by the Board of Examiners and the accompanying Commentary leads to the conclusion that the Legislature and the Board, as *533 the agency delegated to implement the statutory criteria, did not envision the application of the Guidelines entitled “Current Offense(s)” to the crime of possessing a sexual performance by a child.
While the court has concluded that these specific risk factors as now fashioned are not applicable in this case, the initial argument made by the prosecution was not irrational or beyond the ambit of an expansive definition of “victim.” A broader definition of “victim” would acknowledge the moral, mental and physical injuries which children whose sexual performances are depicted sustain. Moreover, the criminals who obtain these lurid performances whether by downloading them from the Internet or by other means are supporting the commercial exploitation of children and are incipient pedophiles. These observations and policy considerations, however, are more properly addressed to the Legislature or the Board of Examiners. For this court to read such an expansive definition of “victim” into the statute would not be interpreting the statute but rewriting it.